In the Matter of the Judicial Settlement of the Accounts of
WILLIAM COLLINS, as Sole Surviving Executor and Trustee
under the Will of JOHN G. COLLINS, Deceased.
EMMA L. COLLINS, Objector, Appellant; WILLIAM COLLINS, Executor,
etc., Respondent.

*Vested remainder — acceleration of the execution of a power of sale — conversion of
realty into personalty.*

A testator devised a house and lot to his wife to have and hold during her life,
   with a direction that at her death the property should be sold by the executor,
   and the proceeds, with all the testator's other estate, be divided between his
   "descendants," according to law. The testator left at his death, his widow
   and three children.
*Held,* that on the death of the testator, his three children took a vested remainder
   in the property devised to the widow for life.
The execution of the above power of sale in respect to the house and lot was
   accelerated by a sale thereof by the executor prior to the widow's death, with
   the consent and joinder of all the persons interested therein, namely, the
   testator's widow and children; the proceeds were invested by the executor in
   his name and the income applied to the use of the widow.
*Held,* that these proceeds were to be treated as though realized upon a sale
   within the strict terms of the will;
That as the direction to sell upon the death of the wife was peremptory and
   left no discretion in the executor, such proceeds were to be deemed personal
   property; and that the executor was bound to account, as such, for the same.
A son of the testator, who had survived his father, died before the executor's
   accounting, which took place after the death of the testator's widow, as to the
   proceeds of sale of said house and lot.
*Held,* that the personal representative of such deceased child, as well as his heirs
   and next of kin, were necessary parties to the accounting.

APPEAL by Emma L. Collins, objector, from a decree of the
Surrogate's Court of New York county, entered in the office of the
surrogate on the 14th day of October, 1892, confirming the report
of a referee upon an accounting of William Collins, as executor,
etc., of John G. Collins, deceased.

The following facts appear from the opinion of the referee
(Robert E. Deyo, Esq.), together with his reasons, referred to in the
opinion of the court, why the executor was not required to account

as such for the $1,000 provided by the testator's children to pay the annuity of fifty dollars to the testator's widow:

"John G. Collins died in 1858.   His estate consisted of personal property, a piece of real estate, No. 41 Wooster street, and another piece in 84th street (Yorkville).

"His will was admitted to probate September 20th, 1858.

"It provided that, during her widowhood, his wife should have the net income of his property in Wooster street for the support of herself and their children.   He also gave her certain personal property absolutely and 'the interest and income, use and benefit of all the residue of my estate during her widowhood.'   If she remarried, she was restricted to the use 'during her life' of the house and lot in 84th street, sometimes called the house in Yorkville, and an annuity of fifty dollars.   In the event of her remarriage, the income of his estate, except the annuity and 84th street (Yorkville) house, was to be divided between his children until his son George W., who was his youngest child, arrived at age.   At that time, if his widow had remarried, all his estate, except the 84th street house and the amount set apart to raise her annuity of fifty dollars, was to be divided between his children.   At the death of his widow, the 84th street (Yorkville) house was to be sold by the executors and the proceeds thereof 'and of all my other estate' divided 'between my descendants.'

"The testator left him surviving his widow and three children, William, John W. and George W. Collins, the two latter then being infants.

"In 1860 the widow married Daniel Saunders.

"In 1861 William Collins and John Findley, the only executors who qualified, rendered an account in this court.   The usual proceedings were had, and a decree was entered June 1st, 1861, showing a balance in their hands of five hundred and twenty-three $\frac{36}{100}$ dollars ($523$\frac{36}{100}$) which they were directed to distribute.

"The rents of the Wooster street property were received by William Collins, as executor, from the time of his mother's remarriage in 1860, until the property was sold to him as hereinafter stated.

"George W. Collins, the youngest son, became of age in August, 1866.

" In May, 1867, William Collins purchased from his two brothers their interest in the Wooster street property, and thus became its sole owner.

" In April, 1874, the 84th street (Yorkville) property was sold to Abbie M. W. Peffers.  Two conveyances were made, one by William Collins as executor, the other by Mary Saunders, the widow, William and John W. Collins and their wives, and George Collins. The total consideration was eight thousand five hundred dollars ($8,500.00), made up as follows : Four thousand dollars secured by a mortgage on the 84th street property, four thousand dollars by a mortgage on property in 83d street, Harlem Bank stock, par value two hundred dollars, and cash, three hundred dollars.

" The mortgage on the 84th street property has been paid.   The mortgage on the 83d street property was foreclosed and the property bought in by William Collins, he taking the title as executor.

" From the time of her remarriage until her death, Mrs. Saunders was not called upon to bear any portion of the expenses of the 84th street house, such as taxes, repairs, etc., and after the 84th street house was sold, and the mortgage on the 83d street house taken in part payment thereof had been foreclosed and bought in, she received the gross rents of that house up to the time of her death, all the expenses being paid by William Collins, and charged nominally against the estate.

" John W. Collins died January 7th, 1877, leaving a widow, also one child named Emma L. Collins.

" Mrs. Saunders died in October, 1886.

" William Collins collected the rents on the 83d street house from the widow's death down to May 4th, 1888, when the property was sold for fifteen thousand seven hundred and fifty dollars ; part of the purchase money was secured by a mortgage on the property, but on the 4th day of January, 1889, the whole amount had been paid up.

" Emma L. Collins is the general guardian of Emma L. Collins, who is an infant over the age of fourteen years, the said infant being the only surviving child of John W. Collins.

" On January 13th, 1890, the said guardian filed her petition setting forth among other things that William Collins was the sole surviving executor of John G. Collins, that by reason of the death

FIRST DEPARTMENT, JUNE TERM, 1893.          [Vol. 70.

of John W. Collins, her father, said infant was entitled to a distributive share in the undistributed proceeds of the estate, that various payments had been made to the general guardian on account of such distributive share, and that the petitioner believed that other funds had not been accounted for or distributed.

" The prayer was that the executor be required to account. On January 13th, 1890, the said executor filed a petition that all parties in interest be cited to attend upon such accounting, and thereafter, and on March 3d, 1890, an account was filed.

" Objections having been filed on behalf of the said Emma L. Collins, an order was entered referring the matter.

" As appears by the decree on the accounting in 1861, the estate consisted of five hundred and twenty-three $\frac{36}{100}$ dollars in money, and there were besides, the premises in Wooster street, and the house and lot in 84th street (Yorkville).

" To the income of all of this the widow was entitled if she remained unmarried, but as at the time of the accounting in 1861, she had already remarried, she was only entitled thereafter to the annuity of fifty dollars, and the use of the 84th street (Yorkville) house during life, and because of such remarriage, the remainder of the estate, viz., the five hundred and twenty-three $\frac{36}{100}$ dollars of money, and the Wooster street property, became the absolute property of the testator's three sons, both being subject to the payment of the annuity of fifty dollars.

" It is evident that the five hundred and twenty-three $\frac{36}{100}$ dollars alone was not sufficient to raise the annuity of fifty dollars, consequently that annuity could not be paid without a resort, for a part at least, to the Wooster street property.

" These difficulties were surmounted when John W. and George W. sold their shares in the Wooster street property to William, which was May 8th, 1867, in the following manner.

"'They made an agreement in writing that a fund of one thousand dollars should be set apart to raise the annuity, to which fund each should contribute one-third; that this fund should be left in the hands of William and that the shares of John W. and George W. should be contributed out of their shares of the purchase money due from William on the Wooster street property.

"It does not appear that Mrs. Saunders objected to this arrangement.

"It is claimed on behalf of Emma L. Collins, that this fund, or at least so much of it as was contributed thereto by John W. and George W., together with any interest realized thereon in excess of fifty dollars, the amount of the annuity, shall be accounted for as assets of this estate.

"It is attempted to support this claim on the theory that the annuity was a charge upon the Wooster street property, and as such, enforcible by the executors; that the fund of one thousand dollars was substituted in place of the Wooster street property, and that thereby the same became an asset of this estate by operation of law.

"Conceding that the annuity was a charge in whole or in part upon the Wooster street property, still the direction to the executors to make the necessary provisions for its payment did not impress upon the charge any characteristic of a trust. The annuity was simply a legacy, and as such, it was alienable or releasable by the annuitant. (*Lang* v. *Ropke*, 5 Sandf. 363, 370; *Hawley* v. *James*, 16 Wend. 61; *Griffen* v. *Ford*, 1 Bosw. 123, 143, 144; *Maurice* v. *Graham*, 8 Paige, 483, 487; *Hunter* v. *Hunter*, 17 Barb. 25, 90; *Mason* v. *Jones*, 2 id. 229, 247.)

"Having the power to release the property absolutely from the charge, and also to release the estate from any claim for the annuity itself, *a fortiori* she had the right to consent to, or acquiesce in, an arrangement by which the annuity was raised from a sum of money contributed as a fund by her sons or anybody else, and it is immaterial whether it was contributed out of the proceeds of the sale of the property subject to the charge, or from some other source. If the sons had continued to hold the property jointly until their mother's death, they would then have it free from the charge or liability to account, and in the same way, they and their representatives now have the substituted fund. If William has not accounted and settled properly for it, those aggrieved have a remedy, but not in this court.

"The said agreement also provided that from the purchase money there was to be reserved three hundred and thirty-three $\frac{33}{100}$ dollars, from the amount due from William to each of his brothers, to cover

the expense of paving 84th street and other disbursements, subject to approval.

"It is claimed that so much of the share of this fund as was contributed by John W. Collins, deceased, is to be accounted for in this proceeding. I overrule this claim on the ground that the agreement shows that the three hundred and thirty-three $\frac{33}{100}$ dollars belonged to John W. Collins individually, and that the disposition of it did not concern the estate of John G. Collins."

In reference to the 84th street (or Yorkville) house and lot devised to the testator's widow for life, the will further provided as follows: "At the death of my wife, the house and lot in Yorkville to be sold by my executors, and the proceeds thereof, and of all my other estate, to be divided between my descendants according to law." The referee decided that by "my descendants," the testator meant his descendants living at his death, who were his three children; that the words "my descendants" were to be read as though they were "my children," and that if so read, the authorities were uniform that at the testator's death, his three sons took a vested remainder in fee in the Yorkville house, subject to the life estate of their mother and subject also to the execution of the power of sale, citing *Post* v. *Horning* (6 N. Y. St. Repr. 716); *Williams* v. *Freeman* (98 N. Y. 577); *Hedger's Estate* (6 N. Y. Supp. 769; affd., 9 id. 347); *Livingston* v. *Greene* (52 N. Y. 118); *Matter of Mahan* (98 id. 372); *Warner* v. *Durant* (76 id. 133).

*J. S. Van Wyck*, for the appellant.

*R. H. Magrath, Jr.*, for the respondent.

VAN BRUNT, P. J.:

In view of the correct statement of facts contained in the referee's report which formed the basis of the surrogate's action, it is not necessary to restate the same in this opinion.

We also concur in the conclusions arrived at by the referee that the children of John G. Collins took a vested remainder in the property situated in Eighty-fourth street, devised to the widow of said John G. Collins for and during her natural life; and that the executor was not required to account as such for the $1,000 which had

been provided by such children to pay the annuity of fifty dollars to the widow of the testator, for the reasons stated in his opinion.

But we do not concur in the referee's conclusion that there are no assets of the estate of John G. Collins in the hands of William Collins as executor. The theory upon which the referee arrived at this conclusion, is that the proceeds of the sale of the premises in Eighty-fourth street made under the circumstances stated by him, did not remain assets of the estate, but belonged to the persons in whom the fee was vested, and that the holding of the same by the respondent as executor was done by virtue of an agreement between the grantors that he should do so, and not by virtue of any authority derived from the will.

It will be seen upon an examination of the will, that this property in Eighty-fourth street was bequeathed to the widow of the testator during her life, whether she married again or not; and there was also a provision that in case she remained unmarried after his youngest child attained lawful age, his estate was to remain unsold during her widowhood unless she and his children should think it best to sell the same, in which case they were authorized with her concurrence to sell the same and give the purchaser or purchasers good and sufficient deeds for the same, and in such case the proceeds should be invested upon bond and mortgage or other approved securities, and the net income thereof applied to the use of his wife during her widowhood. The wife having remarried, this provision of the will did not apply. The will then further provides that at the death of his wife the house and lot in question were to be sold by the executors, and the proceeds with all his other estate, to be divided between his descendants according to law. But prior to the death of the wife, the executor sold this property in Eighty-fourth street, received the proceeds and invested them in his name as executor, and applied the income to the use of the wife. And in order to give efficacy to the title, the wife and the children executed conveyances for nominal consideration. This they had the power to do, as is expressly held in the case of *Kilpatrick* v. *Barron* (125 N. Y. 751), in which it is held that the rule is, that where by the will the exercise of a power of sale given to executors is postponed for the benefit of legatees or devisees during the intermediate period, *the execution of the power* may be accelerated by the consent of the executors and all the persons

interested, provided the persons interested and who join in the conveyance are *sui juris*, and such conveyance is not in contravention of any trust, and is consistent with the substantial purpose of the testator in creating the power.

Applying this rule to the case at bar, by the consent of all the parties interested, the executor was permitted to sell prior to the death of the wife instead of awaiting the happening of that event, thereby accelerating the execution of the power, and nothing else. This was the understanding of the parties at the time of the execution of the conveyance, because the executor received the consideration, precisely as he would have done had he sold under the power of sale after the death of the wife and invested the proceeds in his own name as executor. This being the case, these proceeds are to be treated precisely the same as though they had been realized upon a sale had within the strict terms of the will. Such proceeds were to be deemed personal estate and to be treated by the executor as such, because the direction to sell this house and lot upon the death of the wife is peremptory, and leaves no discretion in the executor, and the real estate, therefore, became converted from that time.

It would seem, therefore, that the executor in this proceeding was bound to account for the proceeds realized from the sale of the house and lot, and that the personal representatives of the deceased child as well as his heirs and next of kin were necessary parties to such accounting.

The decree of the surrogate should be reversed and this proceeding remitted to the surrogate, so that the proper proceedings may be had for an accounting of the executor in reference to the proceeds of the house and lot in question, with costs to abide event.

O'BRIEN and FOLLETT, JJ., concurred.

Decree of surrogate reversed and this proceeding remitted to the surrogate, so that the proper proceedings may be had for an accounting of the executor in reference to the proceeds of the house and lot in question, with costs to abide event.